IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MVB Mortgage Corporation,            :

    Plaintiff,               :

  v.                                 :     Case No. 2:08-cv-771

Federal Deposit Insurance            :     JUDGE GRAHAM
Corporation,

    Defendant.               :

ORDER

    This case is before the Court to consider plaintiff MVB Mortgage Corporation's motion to compel discovery. The motion relates to certain documents that were redacted in order to preserve attorney-client privileged information. After the motion was fully briefed, the Court held a status conference to discuss other matters in the case. At the conference, the Court was told that all but one of the issues raised in the motion had been resolved through the production of the challenged documents, and it was provided with a copy of the only document at issue (an email thread) for an *in camera* inspection. MVB then filed a supplemental brief in order to focus its arguments more precisely on this one document. For the following reasons, the motion to compel will be granted.

I. Background

    The FDIC has identified a gentleman named Harry Potter as a testifying expert witness. Originally, it produced to MVB some, but not all, of the documents which had been provided to him in his capacity as a testifying expert. Relying on the requirement in Fed.R.Civ.P. 26(a)(2) that expert witness disclosures must

include the data or other information considered by the witness in forming the witness' opinions and any exhibits that will be used to summarize or support them, as well as a subpoena that it issued on November 9, 2009, MVB moved to compel disclosure of three types of documents: communications between FDIC's attorneys and Mr. Potter, documents generated by those attorneys and provided to Mr. Potter, and his itemized invoice for services rendered.

In response, the FDIC agreed to produce some additional documents. However, it redacted a portion of what it described as "certain communications in" an "e-mail thread which involve attorney/client communications between counsel and the FDIC which were inadvertently forwarded to Mr. Potter." Memorandum in Opposition, Doc. #52, at 1. In that memorandum, the FDIC argued that there had been no waiver of the privilege because disclosure of privileged communications to an expert witness does not constitute a waiver, because only the client, and not its counsel, can waive the privilege, and because the disclosure was inadvertent. Finally, it asserts that Mr. Potter neither reviewed nor considered the privileged information in forming his opinions. The memorandum was not, however, supported by any evidence concerning this last assertion.

In its reply memorandum, MVB argues that there is a bright-line rule in this Circuit that all documents given to an expert - privileged or not - must be disclosed to the opposing parties. See Regional Airport Auth. of Louisville v. LFG, LLC, 460 F.3d 697 (6th Cir. 2006). It disputes, both in the reply and in the supplemental memorandum, the proposition that the disclosure was inadvertent, because the e-mail thread shows that counsel for the FDIC specifically sent this communication to its expert. Finally, it argues that it must be inferred from the unredacted portions of the e-mail thread that Mr. Potter both relied on this

information and likely incorporated it into his opinions.

## II. The Email Thread

The Court will describe the email thread at issue here without revealing the precise content of the redacted portions. The Court can disclose that, to the best of its ability to interpret the three pages of documents given to it for *in camera* review, there are only five separate email communications which have been redacted in whole or in part. It is possible that the documents produced to MVB show more than five redacted emails. The FDIC's explanation for that is based on the penchant for emails to attach themselves to multiple communications. In fact, that appears to be how they made their way to Mr. Potter, because he was not the original addressee on any of these emails.

The sender and recipient of the five emails are as follows:

1. An email dated October 27, 2009, sent at 12:34 p.m., from Tom Heintschel, trial counsel for the FDIC, to Robert B. Truelson, an attorney in the FDIC's legal division in Houston, Texas;

2. An email dated the same day, sent at 1:08 p.m. from Mr. Truelson to Mr. Heintschel;

3. Another email dated the same day, sent at 1:32 p.m. from Mr. Truelson to Mr. Heintschel;

4. A fourth email dated October 27, 2009, sent at 3:32 p.m. from Mr. Heintschel to Mr. Truelson; and, finally,

5. An email dated October 28, 2009, sent at 10:35 a.m. from Mr. Truelson to Mr. Heintschel.

All of the emails have a common theme. At the time they were sent, Mr. Heintschel was apparently working with Mr. Potter on the wording of the declaration which would be filed on October 28, 2009, supporting the FDIC's response to MVB's motion for summary judgment on count three of the complaint. According to

the unredacted portion of the fourth email, Mr. Truelson and Mr. Heintschel were considering whether a particular sentence should be added to the declaration, that sentence being: "The documents I reviewed and to which I referred in the preparation of this Declaration are voluminous and the contents of them are therefore being presented by me in summary form."  That sentence (with a few minor grammatical alterations) did find its way into the declaration, and appears as the third sentence in ¶6.  See Doc. #40-3, at 3.

In addition to discussing the wording of this sentence, Mr. Truelson and Mr. Heintschel also talked about why it might be advisable to add it to the declaration.  The Court has read the entire declaration, and it is fair to say that none of those discussions appear to have had any influence on the content of that document beyond the addition of that single sentence. Because that sentence was not redacted from the fourth October 27, 2009 email, MVB has been made aware of the fact that the originator of that language was counsel and not Mr. Potter.  The question is whether it is also entitled to see counsel's exchange of comments which led to the drafting of the sentence and the decision to forward it to Mr. Potter as a proposed inclusion into his declaration.

### III.  Legal Analysis

There is no question that these five emails were sent to Mr. Potter.  There is also no question that he is a testifying expert within the meaning of Rule 26(a)(2).  Finally, although the FDIC attempts to argue otherwise, there is no question that, in the Sixth Circuit, any document provided to a testifying expert, privileged or otherwise, is ordinarily subject to disclosure. The Court of Appeals said as much in Regional Airport Auth. of Louisville v. LFG, LLC, 460 F.3d 697, 716 (6th Cir. 2006) ("we read Rule 26(a)(2) as requiring disclosure of all information

provided to testifying experts"). The District Courts in the Sixth Circuit have read the case that way. See, e.g., Rochow v. Life Ins. Co. of North America, 2010 WL 100633 (E.D. Mich. January 5, 2010); In re Commercial Money Center, Inc., Equipment Lease Litigation, 248 F.R.D. 532 (N.D. Ohio 2008); City of Owensboro v. Kentucky Utilities Co., 2008 WL 4542674 (W.D. Ky. October 8, 2008); Brdar v. Cottrell, Inc., 2007 WL 2254710 (M.D. Tenn. August 3, 2007). So has this Court. United States v. American Electric Power Service Corp., 2006 WL 3827509 (S.D. Ohio December 28, 2006). Consequently, as the court in Rochow succinctly stated, the question is not whether the communications in question are privileged; "[t]he question is whether that matters." Id. at 2. Usually, when a bright-line rule is being followed, it does not.

    The FDIC's argument that, despite the holding in Regional Airport, it can give privileged communications to an expert witness to review without waiving the privilege, and its argument that only the client and not counsel can waive the privilege, merit little discussion. Regional Airport clearly forecloses the former assertion, and the latter would create a convenient end-around that decision whenever counsel and not the client chose what information to send to a testifying expert - which is what occurs in almost every case litigated in federal court. The only issue which deserves a more detailed analysis is the claim that the disclosure was inadvertent. Although MVB argues that this assertion cannot be true because trial counsel sent these emails to Mr. Potter, the Court is willing to assume, for purposes of discussion, that counsel was not specifically aware that all of the back-and-forth between himself and Mr. Truelson had appended itself to the emails he sent to Mr. Potter. Again, the question is whether that matters. The Court concludes that it does not.

    Certainly, a large body of case law has developed concerning

-5-

inadvertent disclosures of privileged material during the course of discovery.  See, e.g., Ciba-Geigy Corp. v. Sandoz, Ltd., 916 F.Supp. 404 (D.N.J. 1995).  The intermediate approach to that issue espoused by that and other decisions has routinely been applied in this District.  See, e.g., Nilaar v. Mercy Health Systems-Western Ohio, 2004 WL 5345311 (S.D. Ohio March 22, 2004); see also Hawkins v. Anheuser-Busch, Inc., 2006 WL 3231756 (S.D. Ohio June 19, 2006).  That approach involves an analysis of the reasonableness of the measures designed to prevent inadvertent disclosures of privileged materials, the efforts taken after disclosure to remedy the error, how much other discovery has been taken, and whether recognizing the privilege would be fundamentally fair under the particular circumstances presented. Hawkins, at *2, citing Lois Sportswear, USA v. Levi Strauss & Co., 104 F.R.D. 103 (S.D.N.Y. 1985).  As MVB points out, the FDIC has not addressed any of these factors in its memorandum.  Even if it had, however, the Court concludes that this test is not applicable to this situation.

In the context of the exchange of information during discovery, it is inevitable that errors will be made and privileged documents will sometimes be produced inadvertently. The recent amendments to Fed.R.Evid. 502 reflect this reality. See Fed.R.Civ.P. 502(b) (essentially codifying the intermediate approach to inadvertent production of privileged information). The disclosure of information to an expert occurs in an entirely different context, however.  Not only is the disclosure typically more limited in its scope, but counsel have a much greater degree of control over the timing and content of that disclosure. Further, at least two of the reasons behind the bright-line rule announced by the Court of Appeals in Regional Airport are to make it simple to decide, in that context, if a waiver has occurred - a purpose that would be undermined by wholesale importation of

the inadvertent waiver doctrine into the inquiry - and because
the drafters of Rule 26(a)(2) wanted to give the parties in
litigation the ability to see everything the expert saw when he
or she was in the process of formulating an opinion.  Only then
can the parties be confident that they have everything they need
to cross-examine the expert effectively.  Once an expert sees
information, even if it is the product of an inadvertent
disclosure of something otherwise privileged, that information
becomes part of the expert's mental database, and the opposing
party is entitled to test how, if at all, knowing that
information may have influenced the expert's opinion.  Even in a
case like this, where the Court, after reviewing the information,
thinks it unlikely that the withheld information made a
significant difference in the expert's ultimate opinions or
conclusions, it is not the Court's job to sift through the
universe of information supplied to the expert and to make that
determination.  The drafters of the Rule assigned that
responsibility to counsel.  The Court's job is to make sure that
counsel get what they need to discharge that responsibility, and
it does so most effectively by concluding that a claim of
inadvertent waiver cannot be used to withhold information from
opposing counsel once it has found its way into the expert's
hands - however unintentional that may have been.  Consequently,
MVB is entitled to the unredacted versions of these five emails.

## IV. Disposition and Order

For the foregoing reasons, the motion of plaintiff MVB
Mortgage Co. to compel defendant to produce documents (#50) is
granted.  An unredacted version of the five emails in question
shall be produced to MVB's counsel within fourteen days of the
date of this order.

## V. Appeal Procedure

Any party may, within fourteen days after this Order is

filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge